# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MOUNT VERNON FIRE INS. CO., | : | |
| Plaintiff , | : | |
| v. | : | |
| JOANNE LINARTE; JANE DOE; JESSICA DOE, | : | |
| Defendants. | : | No. 3:09cv442 (MRK) |
| JANE DOE; JESSICA DOE, | : | |
| Counterclaimants, | : | |
| v. | : | |
| MOUNT VERNON FIRE INS. CO., | : | |
| Counterclaim Defendant. | : | |

## RULING AND ORDER

Pending before the Court is the Motion for Summary Judgment [doc. # 41] filed by Plaintiff-Counterclaim Defendant Mount Vernon Fire Insurance Co. ("Mount Vernon"). Mount Vernon seeks a declaratory judgment stating: (1) that it had no duty to defend Defendant Joanne Linarte in connection with two lawsuits brought by Defendants-Counterclaimants Jane Doe and Jessica Doe ("the Does"); (2) that it had no duty to indemnify Ms. Linarte in connection with those lawsuits ("the *Doe* lawsuits"); and (3) that it has no duty to indemnify the Does, to whom Ms. Linarte assigned possible claims against Mount Vernon as part of a settlement of the *Doe* lawsuits. At the hearing on the Motion for Summary Judgment, both Mount Vernon and the Does requested that if the Court should deny Mount Vernon's Motion for Summary Judgment, it decide as a matter of law

whether Mount Vernon had a duty to defend Ms. Linarte under the Child Molestation Liability Insurance endorsement to Ms. Linarte's 1999-2000 insurance contract with Mount Vernon.

For the reasons set forth below, the Court DENIES Mount Vernon's Motion for Summary Judgment. The Court finds as a matter of law that Mount Vernon had a duty to defend Ms. Linarte in connection with the *Doe* lawsuits under the 1999-2000 Child Molestation Liability Insurance endorsement and that Mount Vernon breached that duty.

**I.**

The Court assumes the parties' familiarity with the factual and procedural background of this case and will only briefly describe that background here. Other facts will be introduced as needed throughout this ruling. For the most part, the facts are undisputed.

The Does, through their mother,[1] each brought a civil suit against Ms. Linarte in 2002. In those suits, the Does – who are twin sisters – alleged that over a period of six years, they were sexually molested by Ms. Linarte's son, Francisco Linarte, Jr., at the daycare facility run by Ms. Linarte. After the civil suits were initiated, Mount Vernon undertook an investigation and ultimately informed Ms. Linarte that it would not defend or indemnify her in the actions. *See* Letters from Amy F. French, Claims Examiner, to Joanne Linarte, of Sept. 10, 2002; Feb. 10, 2004; Nov. 23, 2004 & Jan. 17, 2008, Exs. to Aff. of Amy Horn, Ex. J to Mem. in Supp. [doc. # 42-10] at 8-10, 12-15, 17-20, 25-28.

The Does settled their civil suits against Ms. Linarte, and judgments were entered in accordance with those settlements. *See* J. in Accordance with Stipulation, *Doe v. Linarte*, No. FST-CV-04-40022418 (Conn. Super. Ct. Sept. 18, 2008), Ex. F to Mem. in Supp. [doc. # 42-6] at 2; J. in

---

[1] "Mother Doe" also was one of the original parties to this action. *See* Compl. [doc. # 1]. When the Court refers to "the Does" as litigants, it does so with the understanding that until Jane and Jessica Doe turned eighteen in 1999, they were minors for whom Mother Doe acted as "parent/next friend."

2

Accordance with Stipulation, *Doe v. Linarte*, No. FST-CV-04-40022625 (Conn. Super. Ct. Sept. 18, 2008), Ex. G to Mem. in Supp. [doc. # 42-7] at 2. As part of the settlements, the parties entered into stipulations whereby Ms. Linarte – without admitting the truth of the allegations in the complaint – agreed that she was indebted to Jessica Doe for $500,000 plus pre- and post-judgment interest, and to Jane Doe for $500,000 plus pre- and post-judgment interest.[2] In addition, Ms. Linarte agreed to assign all tort and contract claims and rights against Mount Vernon and others "from which ultimate satisfaction and payment" of the settlement amount and pre-judgment and post-judgment interest could be had under Connecticut General Statutes § 38a-321. Stipulation, *Doe v. Linarte*, No. FST-CV-04-40022418 (Conn. Super. Ct. Sept. 18, 2008), Ex. F to Mem. in Supp. [doc. # 42-6] at 4; Stipulation, *Doe v. Linarte*, No. FST-CV-04-40022625 (Conn. Super. Ct. Sept. 18, 2008), Ex. G to Mem. in Supp. [doc. # 42-7] at 4. The Does agreed to pursue collection of those amounts solely through enforcement of the rights and claims against Mount Vernon and others that were assigned to them by Ms. Linarte and to "otherwise release [Ms.] Linarte from further liability regarding . . . payment and satisfaction of [the] judgment [and] pre-judgment and post-judgment interest." Stipulation, *Doe v. Linarte*, No. FST-CV-04-40022418 (Conn. Super. Ct. Sept. 18, 2008), Ex. F to Mem. in Supp. [doc. # 42-6] at 4; Stipulation, *Doe v. Linarte*, No. FST-CV-04-40022625 (Conn. Super. Ct. Sept. 18, 2008), Ex. G to Mem. in Supp. [doc. # 42-7] at 4. Thus, although Ms. Linarte is a nominal Defendant in this matter, the disputes in this action are between Mount Vernon and the Does.

On November 26, 2008, the Does informed Mount Vernon's affiliated company United States Liability Insurance Group ("USLI") that they believed that the company had a duty to

---

[2] Each of the judgments entered in accordance with the stipulations in the *Doe* lawsuits awarded $500,000 plus $230,000 in pre-judgment interest to the plaintiff. *See* J. in Accordance with Stipulation, *Doe v. Linarte*, No. FST-CV-04-40022418 (Conn. Super. Ct. Sept. 18, 2008), Ex. F to Mem. in Supp. [doc. # 42-6] at 2; J. in Accordance with Stipulation, *Doe v. Linarte*, No. FST-CV-04-40022625 (Conn. Super. Ct. Sept. 18, 2008), Ex. G to Mem. in Supp. [doc. # 42-7] at 2.

indemnify Ms. Linarte, and stated that if the company did not pay the judgments in full within thirty days, the Does would institute actions to collect the judgments under Connecticut General Statutes § 38a-321. *See* Letter from Attorney Amanda R. Whitman to Amy French, Claims Examiner, of Nov. 26, 2008, Ex. C to Mem. in Supp. of Mot. to Dismiss [doc. # 26-3] at 2.

On March 19, 2009, Mount Vernon filed its Complaint [doc. # 1] in the United States District Court for the District of Connecticut. On April 9, 2009, Mount Vernon filed an Amended Complaint [doc. # 12]. In its Amended Complaint, Mount Vernon sought a judgment declaring that it had no obligation to provide indemnity to Ms. Linarte pursuant to the Stipulated Judgments, that Mount Vernon had no obligation to provide indemnity to the Does pursuant to the Stipulated Judgments entered against Ms. Linarte, and that all allowable costs be taxed to the Defendants. *See* Am. Compl. [doc. # 12] at 12-13. Mount Vernon later amended its Amended Complaint, correcting certain typographical errors and adding to the prayer for relief a declaration that Mount Vernon had no obligation to defend Ms. Linarte in the *Doe* lawsuits. *See* Mot. to Amend/Correct Am. Compl. [doc. # 22]; Order Granting Mot. to Amend/Correct [doc. # 24]. On June 12, 2009, the Does filed a Motion to Dismiss the Second Amended Complaint, or in the Alternative, to Stay the Case [doc. # 20] on jurisdictional grounds.

On June 16, 2009, the Does sued Mount Vernon in the Connecticut Superior Court. *See Doe v. Mount Vernon Fire Ins. Co.*, No. FST-CV09-6001484-S (Conn. Super. Ct. filed June 16, 2009).

On March 8, 2010, Judge Bryant denied the Does' Motion to Dismiss the Second Amended Complaint or in the Alternative, to Stay the Case [doc. # 25]. Judge Bryant concluded that exercising jurisdiction over the case would "not improperly encroach on the domain of the state court." Mem. of Decision Denying Mot. to Dismiss [doc. # 30] at 8. On March 16, 2010, Mount Vernon filed a motion in the Connecticut Superior Court to stay the state court action, which the Connecticut Superior Court granted on August 23, 2010.

On August 4, 2010, the Does filed their Answer [doc. # 38], with affirmative defenses. The Does also brought two counterclaims pursuant to Connecticut General Statutes § 38a-321, asserting that Mount Vernon had a duty to indemnify Ms. Linarte for the judgments the *Doe* lawsuits and seeking to collect from Mount Vernon the two $730,000 judgments entered against Ms. Linarte, plus post-judgment interest. *See* Answer to Pl.'s Second Am. Compl. [doc. # 38] at 8-22. Mount Vernon filed its own Answer [doc. # 39] on September 3, 2010 and an Amended Answer [doc. # 40] on September 10, 2010.

On December 17, 2010, Mount Vernon filed pending Motion for Summary Judgment [doc. # 41]. The case was reassigned to this Court on April 11, 2011. In its Motion for Summary Judgment, Mount Vernon asserts that "[t]he undisputed facts establish that Mount Vernon had no duty to defend Ms. Linarte with regard to the *Doe* lawsuits" and thus "no material issue of fact exists to preclude summary judgment in favor of Mount Vernon." Mot. for Summary J. [doc. # 41] at 3.

## II.

The standard of review this Court must apply when reviewing a motion for summary judgment pursuant to Rule 56 is a familiar one. Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica College of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (alteration in original)).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the non-moving party, *see Anderson*, 477 U.S. at 255. If the moving party carries its burden, the party opposing summary judgment may not rely on mere allegations or denials, but rather must "cit[e] to particular parts of materials in the record" to demonstrate that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1). In short, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### III.

The parties agree that Connecticut law governs the Court's interpretation of Mount Vernon's insurance contracts with Ms. Linarte. Under Connecticut law, "[a] contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy giving the words of the policy their natural and ordinary meaning and construing any ambiguity in the terms in favor of the insured." *Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.*, 274 Conn. 457, 463 (2005) (quotation marks, alterations, and citation omitted).

"In construing the duty to defend as expressed in an insurance policy, the obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which will bring the injury within the coverage." *Id.* (quotation marks and citation omitted). Thus, "[i]f an allegation of the complaint falls even *possibly* within the coverage, then the insurance company must defend the insured." *Id.* (emphasis in original) (quotation marks and citation omitted). Whether facts outside the four corners of the complaint "indicate that the claim may be meritless or not covered" is irrelevant. *Id.* at 464 (quotation marks and citation omitted). At the same time, moreover, "[a]n insurer may be obligated to provide a defense . . . if any facts known to the insurer suggest that the claim falls within

6

the scope of coverage," even if the complaint itself is "not properly pleaded to invoke coverage." *Id.* at 466-67 (quotation marks, alteration, and citation omitted).

Therefore, if each of the *Doe* lawsuits included at least one claim that triggered Mount Vernon's duty to defend Ms. Linarte under one or more of her policies with Mount Vernon, or if Mount Vernon was aware of facts outside the allegations in the complaints that would trigger its duty to defend Ms. Linarte, then Mount Vernon breached that duty when it refused to defend Ms. Linarte in the *Doe* lawsuits. *See Schurgast v. Schumann*, 156 Conn. 471, 490 (1968) ("Where a complaint in an action against one to whom a policy of liability insurance has been issued states different causes of action or theories of recovery against the insured . . . the insurer is bound to defend with respect to those [theories or counts] which, if proved, are within the coverage." (quotation marks and citations omitted)); *Blardo v. General Sec. Indem. Co. of Ariz.*, No. CV030829825S, 2004 WL 2361799, at *3 (Conn. Super. Ct. Sept. 28, 2004) ("[I]n a case where multiple causes of action are alleged, the duty to defend applies if one of them falls even possibly within the coverage."); *see also Imperial Cas. & Indem. Co. v. State*, 246 Conn. 313, 332 (1998) ("The fact that the complaint alleges a claim that is excluded by the policy does not excuse the insurer from defending the insured where other counts . . . fall within the provisions of the policy." (quotation marks, alterations, and citation omitted)).

## IV.

Mount Vernon began insuring Ms. Linarte's daycare in 1998. The disputes in this case involve Ms. Linarte's insurance contracts with Mount Vernon for four policy periods, all of which ran November to November: 1998-1999; 1999-2000; 2000-2001; and 2001-2002. For the reasons explained below, the Court concludes that Mount Vernon breached its duty to defend Ms. Linarte under the 1999-2000 policy. Because that conclusion precludes summary judgment for Mount

7

Vernon, the Court need not decide at this time whether Mount Vernon breached a duty to defend Ms. Linarte under any of the other three policies.

The 1999-2000 policy includes a "Child Molestation Exclusion" endorsement, which modifies Ms. Linarte's Commercial General Liability ("CGL") Insurance and Professional Liability Insurance and states that "[t]his policy does not apply to any injury sustained by any person arising out of or resulting from the molesting or abuse of minors by . . . any Insured; . . . any employee of any Insured, or . . . any person performing volunteer services for or on behalf of any Insured, or . . . any other person." Ex. L [doc. # 42-12] at 31. The policy also contains a special endorsement providing Child Molestation Liability Insurance ("Coverage M") coverage. The parties agree that while the 1999-2000 Child Molestation Exclusion endorsement operates to exclude claims based on child molestation from coverage under the policy's CGL Coverage and Professional Liability Insurance, the Child Molestation Exclusion is subject to the 1999-2000 Coverage M endorsement, which adds back in coverage for child molestation claims. However, the parties disagree about the limits of Mount Vernon's liability – both the limit per claim and the aggregate limit – under the 1999-2000 Coverage M endorsement. The Court need not resolve the dispute between the parties regarding the specific Coverage M limits at this time.

The 1999-2000 Coverage M endorsement states, in relevant part:

> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury to any child arising out of molestation caused by one of the insured's employees, and the Company shall have the right and duty to defend any suit against the insured seeking such damages, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted.

Ex. L to Mem. in Supp. [doc. # 42-12] at 27.[3]

Each of the Amended Complaints in the two *Doe* lawsuits ("Amended Complaints") included, in relevant parts, the following allegations:

> 4. At all times relevant to plaintiff's claims in this complaint, Joanne Linarte served as the director of [her daycare] Facility, and was responsible for providing childcare directly to the children who attended the Facility. Joanne Linarte also was responsible for supervising, and did supervise, others who came into contact with the children at the Facility and those who participated in providing childcare to the children who attended the Facility. Included among those Joanne Linarte supervised who came into contact with the children at the Facility was Joanne Linarte's son, Francisco Linarte, Jr., as well as others who assisted in providing childcare services at the Facility.
>
> 5. At all times relevant to plaintiff's claims in this complaint, Joanne Linarte acted within the scope of her duties as director of and provider of childcare services in the Facility.
>
> 6. At all times relevant to plaintiff's claims in this complaint, any other employees, agents and/or representatives of the Facility who provided supervision of childcare services or childcare services to [the minor plaintiff] acted within the scope of their duties in the Facility.
>
> . . .
>
> 8. Joanne Linarte encouraged and allowed Francisco Linarte, Jr. and others to be alone with children at the Facility, including Jane and Jessica Doe, during the day as well as during the evening and night when the children were sleeping.
>
> 9. Starting in or about 1996 . . . Francisco Linarte, Jr. first began sexually assaulting and battering [the minor plaintiff] in the Facility during the night. On numerous occasions between 1996 and 1998 . . . Francisco Linarte, Jr. repeatedly sexually assaulted and battered [the minor plaintiff] in the Facility. Francisco Linarte,

---

[3] There is no copy of Ms. Linarte's original 1999-2000 Coverage M endorsement form in the record. However, it is undisputed that the 1999-2000 Coverage M endorsement was a standard form endorsement – Form L-284 (11/88) – which was submitted by Mount Vernon as part of Exhibit L to the memorandum of law in support of its motion for summary judgment. *See* McGowan Aff. [doc. # 67-1] ¶ 5 ("I have ascertained that while the Form L-284 (11/88) Endorsement contained in certified Policy Number CL 2200213 [Ex. L to Mem. in Supp. [doc. # 42-12]] is the correct endorsement, it is not an exact copy of the form that was issued to Joanne Linarte as it does not list the policy number or the limits of liability in the Schedule."). In other words, the language of the 1999-2000 Coverage M endorsement – as opposed to the limits of liability in the original schedule of coverage – is not in dispute, though the parties disagree about how to interpret that language.

Jr. signed a confession indicating that the assaults occurred between approximately 1996 and 1998, and then stopped at some point approximately in 1998.

10. However, Francisco Linarte, Jr. began sexually assaulting and battering [the minor plaintiff] again approximately sometime in 2000. Francisco Linarte, Jr. continued to sexually assault and batter [the minor plaintiff] in the Facility until August 2002. . . . Francisco Linarte, Jr. signed a confession indicating that assaults occurred between sometime in the year 2000 through August 2002.

11. During the years 1996 through approximately 1998, and the years 2000 through 2002, Joanne Linarte and other agents, representatives and/or employees of the Facility were negligent in failing to take appropriate measures to ensure the safety and well-being of the children in the Facility, including [the minor plaintiff].

Amended Complaint, *Doe v. Linarte*, No. FST-CV-04-4002241S (Conn. Super. Ct. Sept. 18, 2008), Ex. 1 to Pl.'s Am. Compl. [doc. # 12-3] at 17-19; Amended Complaint, *Doe v. Linarte*, No. FST-CV-04-1002252S (Conn. Super. Ct. Sept. 18, 2008), Ex. 2 to Pl.'s Am. Compl. [doc. # 12-3] at 25-27.[4]

### A.

In its Memorandum of Law in Support [doc. # 42] of its motion for summary judgment, Mount Vernon argues that it was not obligated to defend Ms. Linarte under the Coverage M endorsements to her policies on two grounds.

First, Mount Vernon notes that Coverage M only applies to molestation caused by the insured's "employees" and asserts that in the *Doe* lawsuits, the complaints did not allege that Mr. Linarte was an employee of Ms. Linarte or the daycare. *See* Mem. in Supp. [doc. # 42] at 25-26. Mount Vernon also claims that, "as Mount Vernon properly determined based on its investigation of the claim, it is beyond dispute that [Mr. Linarte] was never an employee of Ms. Linarte or her daycare business." *Id.* at 26.

Second, Mount Vernon alleges that Coverage M "applies to damages from 'child molestation or abuse' only if [it] . . . first occurs during the policy period," and that "exclusion (g)" of Coverage

---

[4] With the exception of the plaintiffs' names, the relevant allegations of the Amended Complaints in the two *Doe* lawsuits are identical.

M precludes coverage for "any claim arising out of 'child molestation or abuse' which first occurs prior to the inception of this policy even if such 'child molestation or abuse' continues into this policy period.'" *Id.* at 27 (alterations in original) (quotation marks and citations omitted). The Does' Amended Complaints allege that Mr. Linarte molested the Does from 1996 to 1998 and from "approximately sometime in 2000" until August 2002. *E.g.*, Amended Complaint, *Doe v. Linarte*, No. FST-CV-04-4002241S (Conn. Super. Ct. Sept. 18, 2008), Ex. 1 to Pl.'s Am. Compl. [doc. # 12-3] at 19. The Does' Amended Complaints also allege that "[d]uring . . . the years 2000 through 2002, Joanne Linarte and other agents, representatives and/or employees of the Facility were negligent in failing to take appropriate measures to ensure the safety and well-being of [the Does]." *E.g.*, *id.* Mount Vernon argues in its brief that because the complaints in the *Doe* lawsuits allege that Mr. Linarte first began molesting the Does in 1996, the molestation first occurred prior to the inception of the 1998-1999 policy and thus is not covered by any of Ms. Linarte's policies with Mount Vernon. *See* Mem. in Supp. [doc. # 42] at 28.

However, Mount Vernon's second argument is based on contract language that does not appear in the 1999-2000 Coverage M endorsement, or, for that matter, anywhere else in Ms. Linarte's 1999-2000 insurance policy. Contrary to Mount Vernon's representations in its brief, the 1999-2000 Coverage M endorsement nowhere says that Coverage M only applies to damages from child molestation or abuse that "first occurs" during the policy period, nor does that endorsement contain an exclusion precluding coverage for claims that "first occur[] prior to the inception of the policy." Mem. in Supp. [doc. # 42] at 27. Mount Vernon's citation to the 1999-2000 policy as a source for those quotations is contradicted by the face of the 1999-2000 Coverage M endorsement form that Mount Vernon cites. Although exclusion (g) and the "first occurs" language quoted by Mount Vernon appear in the 1998-1999, 2000-2001, and 2001-2002 Coverage M endorsements, the 1999-2000 Coverage M endorsement form is different. *Compare* Ex. L to Mem. in Supp. [doc. # 42-

11

12] at 27, *with* Ex. K to Mem. in Supp. [doc. # 42-11] at 22; Ex. M to Mem. in Supp. [doc. # 43-13] at 33; Ex. N to Mem. in Supp. [doc. # 42-14] at 34.[5] No temporal limits on liability are specified in the 1999-2000 Coverage M endorsement itself, *see* Ex. L to Mem. in Supp. [doc. # 42-12] at 27, and the 1999-2000 CGL Coverage Form simply limits coverage to "'bodily injury' or 'property damage'" that "occurs during the policy period," *id.* at 6. Thus, Mount Vernon's second argument in its Memorandum of Law in Support [doc. # 42] of its motion for summary judgment is inapplicable to the 1999-2000 Coverage M endorsement.

In its Reply [doc. # 66], Mount Vernon appears to concede that the 1999-2000 Coverage M endorsement does not limit Mount Vernon's liability to claims based on molestation that "first occurred" during the policy period. Pl.'s Reply [doc. # 66] at 7 (quotation marks omitted). In addition, Mount Vernon does not dispute the Does' claim in their Memorandum in Opposition [doc. # 51] that "[a]ny abuse that occurred [during the 1999-2000 policy period] would . . . be covered under the 1999-2000 [p]olicy, so long as it was committed by an employee." Mem. in Opp'n [doc. # 51] at 21.[6] During oral argument, Mount Vernon's counsel acknowledged that if the Court finds that the Does' Amended Complaints, reasonably construed, allege that Mr. Linarte was an

---

[5] The 1998-1999 Coverage M endorsement is titled "Child Molestation or Abuse Insurance" and is a form labeled "L-284 (4/97)." Ex. K to Mem. in Supp. [doc. # 42-11] at 22. The 1999-2000 Coverage M endorsement is titled "Child Molestation Liability Insurance" and is a form labeled "L-284 (11/88)." Ex. L to Mem. in Supp. [doc. # 42-12] at 27. The 2000-2001 Coverage M endorsement is titled "Child Molestation or Abuse Insurance" and is a form labeled "L-284 (REV. 1/99)." Ex. M to Mem. in Supp. [doc. # 42-13] at 33. The 2001-2002 Coverage M endorsement form is identical to the 2000-2001 Coverage M endorsement form. *See* Ex. N to Mem. in Supp. [doc. # 42-14] at 34.

[6] The Does' reference to a period running from "November 7, 1999 through November 7, 2000," Mem. in Opp'n [doc. # 51] at 21, seems to be an error. According to the documents in the record, the policy periods for Ms. Linarte's 2000-2001 and 2001-2002 policies ran November 7 to November 7, but the policy periods for the 1998-1999 and 1999-2000 policies ran November 4 to November 4. *Compare* Ex. M to Mem. in Supp. [doc. # 42-13] at 2, 3; Ex. N to Mem. in Supp. [doc. # 42-14] at 2, 3, *with* Ex. K to Mem. in Supp. [doc. # 42-11] at 2,3; Ex. L to Mem. in Supp. [doc. # 42-12] at 2,3.

"employee" as that term is defined in the 1999-2000 Coverage M endorsement, then Mount Vernon had a duty to defend Ms. Linarte in connection with the *Doe* lawsuits.

**B.**

The 1999-2000 Coverage M endorsement defines "employee" as "any person, other than a Person Insured, in the insured's employment, including persons with child caring responsibilities, attendants, janitors, bus drivers and volunteer workers." Ex. L to Mem. in Supp. [doc. # 42-12] at 27. Although the Does' Amended Complaints do not directly state that Mr. Linarte was an "employee," they do allege that Mr. Linarte, along with "others who assisted in providing childcare services," was under Ms. Linarte's supervision at the Facility and that Mr. Linarte was among those who came into contact with children at the Facility. Although those allegations are hardly definite or clear statements of Mr. Linarte's role at the daycare Facility, they suffice to raise the possibility that Mr. Linarte fell within the endorsement's broad definition of "employee."

The Court disagrees with Mount Vernon's contention that the allegations in the Amended Complaints "plainly distinguish . . . those who provided childcare services[] from [Mr.] Linarte." Pl.'s Reply [doc. # 66] at 5. Each of the Amended Complaints states, in paragraph 4: "Included among those Joanne Linarte supervised who came into contact with the children at the Facility was Joanne Linarte's son, Francisco Linarte, Jr., as well as others who assisted in providing childcare services at the Facility." *E.g.*, Amended Complaint, *Doe v. Linarte*, No. FST-CV-04-4002241S (Conn. Super. Ct. Sept. 18, 2008), Ex. 1 to Pl.'s Am. Compl. [doc. # 12-3] at 17. Although the syntax of that allegation is not a model of clarity, it is reasonable to read the sentence as characterizing Mr. Linarte both as a "person who came into contact with the children at the facility" and as one of the people "who assisted in providing childcare services at the Facility." The preceding sentence in the paragraph states that Ms. Linarte "was responsible for supervising . . . others who came into contact with children at the Facility and those who participated in providing childcare to children who attended

13

the Facility." *Id.* That preceding sentence does seem to distinguish between those "who came into contact with children" and "those who participated in providing childcare," with the conjunction "and" separating the two groups. Yet it appears to group Ms. Linarte with "others who came into contact with children," even though it is clear from other allegations in the Amended Complaints that Ms. Linarte was also one of "those who participated in providing childcare." In other words, the Amended Complaints do not clearly or consistently distinguish between individuals who "came into contact" with children and individuals who "assisted" or "participated in providing childcare."

In addition, the definition of "employee" in the 1999-2000 Coverage M endorsement includes not only "persons with child caring responsibilities," but also, among others, "attendants" and "volunteer workers" in Ms. Linarte's employment. An "attendant" is "a person who attends another, as to perform a service." *Random House Webster's Unabridged Dictionary* (2d ed. 2001). A "volunteer" is "a person who voluntarily offers himself or herself for a service or undertaking." *Id.* A "volunteer *worker*" therefore would be a person who voluntarily offers himself or herself as "a laborer or employee." *Id.* The allegations regarding Mr. Linarte's role also must be read in conjunction with the allegation that "[a]t all times relevant to [the plaintiffs'] claims . . ., Joanne Linarte acted within the scope of her duties as director of and provider of childcare services at the Facility." *E.g.*, Amended Complaint, *Doe v. Linarte*, No. FST-CV-04-4002241S (Conn. Super. Ct. Sept. 18, 2008), Ex. 1 to Pl.'s Am. Compl. [doc. # 12-3] at 18. Thus, while the Does' Amended Complaints do not clearly state whether Ms. Linarte "supervised" Mr. Linarte in her professional capacity or some other capacity, and do not describe the specific contexts in which Mr. Linarte "came into contact with children who attended the Facility," the allegations of those complaints create a reasonable possibility that Mr. Linarte was "employed" by Ms. Linarte in some capacity at the daycare, either as a paid or volunteer worker. *See, e.g., Nat'l Grange Mut. v. Mallozzi*, No. CV054011341S, 2006 WL 3859735, at *2 (Conn. Super. Ct. Dec. 12, 2006) ("The very fact that the

complaint is 'ambiguous' raises the possibility that Garcia-Vargas's allegations fall within the scope of coverage.").

In *Hartford Casualty Insurance Co. v. Litchfield Mutual Fire Insurance Co.*, 274 Conn. 457, the Connecticut Supreme Court had to decide whether a complaint adequately alleged that a defendant, Mitch Wylie, had kept the dog that had bitten the minor plaintiff on the premises of the insured business, Strictly Dirt, for business purposes. *See id.* at 462. Strictly Dirt's insurance policy only required the insurer to defend a suit seeking damages due to "bodily injury or property damage . . . caused by an occurrence and [arising] out of the ownership, maintenance or use of the insured premises or operations that are necessary or incidental to the insured premises." *Id.* at 465 (quotation marks omitted). The Connecticut Supreme Court held that "the complaint create[d] at least the *possibility* that the underlying action . . . [fell] within the broad 'use of premises' coverage" because it was clear from the language of the complaint "that the injury was alleged to have taken place on the business premises of Strictly Dirt, where the child was an invitee, and where Wylie and his dog were also located." *Id.* at 466 (emphasis in original). As in this case, the Connecticut Supreme Court was required to construe "broad policy language," and it followed the "rule . . . [that the] court construes broad policy language in favor of imposing a duty to defend on the insurer." *Id.* (citation omitted).

The Court's conclusion that the allegations in the Amended Complaints were possibly within Ms. Linarte's coverage rests in large part on the broad language of the 1999-2000 Coverage M endorsement. An "employee" is defined in that endorsement to include "*any* person" other than Ms. Linarte herself "in the insured's employment," including individuals who worked for Ms. Linarte on a "volunteer" basis. Ex. L to Mem. in Supp. [doc. # 42-12] at 27 (emphasis added). In other words,

15

any person who served Ms. Linarte in her capacity as owner of the daycare would fall within the Coverage M's definition of "employee."[7]

Because a "reasonable interpretation" of the relevant paragraphs of the Amended Complaints brings the Does' allegations regarding Mr. Linarte's molestation within the scope of Coverage M, *Schilberg Integrated Metals Corp. v. Cont'l Cas. Co.*, 263 Conn. 245, 265 (2003), Mount Vernon was obligated to defend Ms. Linarte in the *Doe* lawsuits even if it "suspected that it would later discover facts that would ultimately relieve it of its duty to indemnify" Ms. Linarte, such as that Mr. Linarte was not in fact an "employee" during the relevant time periods. *Hartford Cas. Ins. Co.*, 274 Conn. at 469; *see DaCruz v. State Farm Fire & Cas. Co.*, 268 Conn. 675, 688 (2004) ("[T]he duty to defend is triggered whenever a complaint alleges facts that *potentially* could fall within the scope of coverage . . . ." (emphasis in original)). Mount Vernon "could have both fulfilled its duty to defend [Ms. Linarte] and protected its right to contest whether [the claims] actually [were] covered . . . by 'defending under a reservation of its right to contest coverage under the various avenues which would subsequently be open to it for that purpose.'" *Hartford Cas. Ins. Co.*, 274 Conn. at 469 (alteration and citation omitted).

The Court also notes that, contrary to Mount Vernon's contention, the evidence in the record does not demonstrate that Mount Vernon determined during its 2002-2004 investigation of Ms. Linarte's claim that Mr. Linarte "was never an employee of Ms. Linarte or her daycare business." Mem. in Supp. [doc. # 42] at 26. In support of that claim, Mount Vernon cites an affidavit of Ms. Linarte dated October 19, 2010, Ex. A to Mem. in Supp. [doc. # 42-1], and an affidavit of Amy Horn, the Mount Vernon employee who handled Ms Linarte's claim, Ex. J to Mem. in Supp. [doc. # 42-10]. Although Ms. Linarte affirms in her affidavit that Mr. Linarte was never an employee of

---

[7] *See Random House Webster's Unabridged Dictionary* (2d ed. 2001) (defining "employment" as "the state of being employed; employ; service").

her daycare business, *see* Linarte Aff., Ex. A to Mem. in Supp. [doc. # 42-1] ¶ 11, her affidavit postdates Mount Vernon's investigation by several years. Ms. Horn's affidavit affirms that during Mount Vernon's investigation of the claim, Ms. Linarte provided Mount Vernon with a written statement dated February 26, 2003, in which Ms. Linarte stated (1) that her daughter Jessica had been a partner in the daycare business but that no other teachers or aides were required; (2) that besides Ms. Linarte, the people who looked after Jane and Jessica Doe included Ms. Linarte's adult daughters and Jessica Garcia, another daycare provider in Norwalk, Connecticut; and (3) that Ms. Linarte's son, Mr. Linarte, was 19 years old in 2003. Horn Aff., Ex. J to Mem. in Supp. [doc. # 42-10] ¶¶ 7-9. No copy of the written statement Ms. Linarte allegedly provided to Mount Vernon in 2003 is included in the record. Regardless, none of the information that Ms. Horn affirms was included in that statement – even if taken as true – would rule out the possibility that Mr. Linarte was an employee of Ms. Linarte and her daycare between November 4, 1999 and November 4, 2000, since the definition of "employee" under the relevant coverage is not limited to "teachers [and] aides," *id.* ¶ 7, and includes, among others, "volunteer workers." Ex. L to Mem. in Supp. [doc. # 42-12] at 27.

## V.

In sum, the Court finds as a matter of law that Mount Vernon was obligated to defend Ms. Linarte in the *Doe* lawsuits under the 1999-2000 Coverage M endorsement and that Mount Vernon breached that duty to defend. Because the undisputed facts establish that Mount Vernon had a duty to defend Ms. Linarte in connection with the *Doe* lawsuits, the Court **DENIES** Mount Vernon's Motion for Summary Judgment [doc. # 41].

Several issues remain to be resolved. First, the Court must decide whether, pursuant to the stipulated judgments entered against Ms. Linarte in the *Doe* lawsuits, Mount Vernon has an obligation to indemnify Ms. Linarte or the Does under the 1999-2000 Coverage M endorsement. In

order to find that Mount Vernon is obligated to indemnify Ms. Linarte and/or the Does under the 1999-2000 policy or any other policy, the Court must determine that the settlements entered into by Ms. Linarte were reasonable and made in good faith. *See Alderman v. Hanover Ins. Group*, 169 Conn. 603, 611 (1975). Although "[a]n insurer who chooses not to provide its insured with a defense and who is subsequently found to have breached its duty to do so must bear the consequences of its decision, including the payment of any reasonable settlement agreed to by the plaintiff and the insured," *Black v. Goodwin, Loomis & Britton, Inc.*, 239 Conn. 144, 153 (1996), the insurer may "challenge the settlement entered into by its insured on grounds of fraud, collusion, or unreasonableness." *Id.* at 155. In their filings on Mount Vernon's motion for summary judgment, none of the parties have alleged any facts related to the reasonableness of the settlements in the *Doe* lawsuits or to the question of whether those settlements were made by Ms. Linarte in good faith.

Second, the Does have brought counterclaims pursuant to Connecticut General Statutes § 38a-321 seeking to collect from Mount Vernon the full amount of each of the two judgments entered against Ms. Linarte in the *Doe* lawsuits, plus post-judgment interest. The judgments entered against Ms. Linarte in the *Doe* lawsuits total $1.46 million, not including post-judgment interest. *See* J. in Accordance with Stipulation, *Doe v. Linarte*, No. FST-CV-04-40022418 (Conn. Super. Ct. Sept. 18, 2008), Ex. F to Mem. in Supp. [doc. # 42-6] at 2; J. in Accordance with Stipulation, *Doe v. Linarte*, No. FST-CV-04-40022625 (Conn. Super. Ct. Sept. 18, 2008), Ex. G to Mem. in Supp. [doc. # 42-7] at 2. The Court has yet to resolve the dispute between the parties regarding the limits of liability under the 1999-2000 Coverage M endorsement. The Court also has not decided whether Mount Vernon was obligated to defend Ms. Linarte in connection with the *Doe* lawsuits under the 1998-1999, 2000-2001, and 2001-2002 policies.

**No later than August 22, 2011,** the parties should file a joint status report informing the Court whether there are any factual disputes regarding Ms. Linarte's settlement of the two *Doe*

lawsuits and listing for the Court any other legal or factual issues that remain to be resolved. The Court will hold a **bench trial on any issues that remain in dispute.**

IT IS SO ORDERED.

/s/        Mark R. Kravitz        
United States District Judge

**Dated at New Haven, Connecticut: July 20, 2011**.